# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-24612-CIV-ROSENBAUM

VM SOUTH BEACH, LLC,

      Plaintiff,

v.

CASA CASUARINA, LLC, *et al.*,

      Defendants.

_____/

### ORDER

This matter is before the Court upon the Memorandum of Law of Defendant Herbert Stettin, as Chapter 11 Trustee of Rothstein Rosenfeldt Adler, P.A., in Connection with the Court's Order Setting Evidentiary Hearing and the Trustee's Notice of Filing of Bankruptcy Court's Order Granting Trustee's Emergency Motion for Relief From Agreed Order Granting Motion of VM South Beach, LLC, for Relief from the Automatic Stay ("Memorandum") [D.E. 156]. The Court has considered the Trustee's Memorandum, Plaintiff's Response to Trustee's Memorandum [D.E. 158], the Trustee's Reply to Plaintiff's Response [D.E. 162], Plaintiff's Supplemental Memorandum of Law in Opposition to Trustee's Request to Refer this Action to the Bankruptcy Court [D.E. 163], and the record. In addition, the Court held oral arguments in this matter. After consideration, the Court now partially refers this matter to the Honorable Raymond B. Ray.

## *I. BACKGROUND*

On April 26, 2012, Plaintiff VM South Beach, LLC ("VM"), filed an Amended Complaint against Defendants Casa Casuarina, LLC; Peter T. Loftin; Herbert Stettin, as Chapter 11 Trustee of

Rothstein Rosenfeldt Adler, P.A.; the United States of America Internal Revenue Service; Premier Protective Services, Inc.; and Luxury Resorts, LLC.[1]  *See* D.E. 48.  In its Amended Complaint, Plaintiff seeks to foreclose a mortgage on certain real property located in Miami-Dade County, Florida (the "Property").[2]  Plaintiff asserts causes of action for foreclosure of mortgage, foreclosure of security interests, assignment of rents, and default of a recourse liability agreement.  Plaintiff also seeks a declaration that all liens against the Property, including one claimed by the Trustee, are inferior to Plaintiff's interest in the Property.  Plaintiff's case was later consolidated with *Casa Casuarina, LLC v. WestLB, AG*, Case No. 1:12-cv-20843-KMM (S.D. Fla.), a related case alleging multiple causes of action against numerous defendants.  The Trustee was not named as a defendant in the related case.

Defendant Herbert Stettin (the "Trustee") is the Chapter 11 Trustee in the matter of *In re: Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (Bankr. S.D. Fla.).  On November 11, 2011, the Trustee filed an adversary proceeding in Bankruptcy Court against multiple defendants, including Casa Casuarina, LLC ("Casa"), Luxury Resorts, LLC ("Luxury"), and Loftin Family, LLC. *See* D.E. 1, *Stettin v. Casa Casuarina, LLC*, No. 11-02779-BKC-RBR (Bankr. S.D. Fla.).  The Trustee later amended his Complaint, adding Peter Loftin as a Defendant.  *See id.* at D.E. 16.  In his Amended Complaint, the Trustee seeks to avoid and recover allegedly fraudulent transfers made to Defendants in the adversary proceeding.  In particular, the Trustee alleges that, in the course of his Ponzi scheme, attorney Scott Rothstein transferred approximately $4.8 million from Rothstein

---

[1] Plaintiff filed its first Complaint on December 23, 2011, against Defendants Loftin and Casa Casuarina, LLC, only. *See* D.E. 1.

[2] According to VM, the mortgage was first recorded against the property on December 1, 2000 and was amended and restarted on December 22, 2006. *See* D.E. 2550, ¶ 8, *In re: Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (Bankr. S.D. Fla.).  The loan documents were then assigned to VM on December 19, 2011. *Id.* at ¶ 9.

Rosenfeldt Adler, P.A. ("RRA"), bank accounts to those of Defendants.  *See id.* at ¶ 32.  The Trustee asserts that Rothstein obtained an interest in Casa—the owner of the Property—and provided money to "cover shortfalls in Casa's operating revenue, repair and maintain the Casa facilities, satisfy unpaid (and outraged) vendors, [and] make Casa's mortgage payments . . . ."  *Id.* at ¶ 42.[3] Accordingly, the Trustee contends, Casa and Loftin "were unjustly enriched by RRA monies that Rothstein misappropriated from RRA and delivered to Casa to supplement its operating revenue and to pay its creditors, vendors, and mortgage lender."  *Id.* at ¶ 42.  In Count IX of its Amended Complaint, the Trustee claims that he possesses an equitable lien in Casa and various entities associated with Peter Loftin.  *Id.* at 20-21.  In Count X, the Trustee seeks to determine the extent and priority of his alleged equitable lien.  *Id.* at 21-22.

In his Memorandum to this Court, the Trustee states that the "uses of RRA monies provided the RRA Trustee, on behalf of the Bankruptcy estate, with legal ownership of a 9.99% interest in Luxury, and, through that, an actual ownership interest in Casa and the Property."  D.E. 156 at 3. Furthermore, the Trustee avers, "The RRA monies that Rothstein pumped into Casa also warrant the imposition of the equitable lien that the RRA Trustee seeks to enforce against the Property and that Plaintiff VM seeks to eradicate."  *Id.*

Prior to the Trustee's filing of the consolidated cases in the pending action, an involuntary bankruptcy case was filed against RRA on November 10, 2009, and an automatic stay was imposed pursuant to 11 U.S.C. § 362(a).  Section 362(a) provides, in relevant part, that the filing of a

---

[3] It appears that Rothstein, using RRA bank accounts, purchased a 9.99% interest in a company called Luxury Resorts, LLC.  Luxury is the sole member of Casa Casuarina, LLC. Casa, in turn, owns the Property that is the subject of this foreclosure action.  *See* D.E. 158 at 4. Therefore, RRA essentially owns a 9.99% interest in Casa.

bankruptcy petition operates as a stay of

> (1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> * * * * *
> (3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4)    any act to create, perfect, or enforce any lien against property of the estate . . . .

In January 2012, VM sought the Trustee's consent to lift the automatic stay so that it could name the RRA Estate as a defendant in the foreclosure proceedings before this Court. *See* D.E. 2550, *In re: Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (Bankr. S.D. Fla.). In support of its Motion for Relief from Automatic Stay With Respect to Casa Casuarina Property, VM alleged that the Property had "never been property of the Debtor or its Estate." *Id.* at ¶ 1. In addition, VM asserted, "The amount of indebtedness outstanding under the Mortgage is significantly greater than the value of the Property." *Id.* at ¶ 3. Thus, VM concluded, even if an equitable lien were imposed against the Property, the lien would be of no value to the RRA bankruptcy estate. *Id.*

The Trustee alleges that, based on both VM's assertions and the United States Government's disclaimer of any interest in the Property, he "consented to entry of an order by the Bankruptcy Court lifting the automatic stay." D.E. 156 at 4. The Agreed Order, entered on February 2, 2012, provided, in relevant part,

> The automatic stay set forth in Section 362(a) of the Bankruptcy Code is modified so as to permit VM South Beach to foreclose on the

4

> property that is the subject of the Foreclosure Action through sale, including without limitation (a) naming the Trustee as the representative of the Estate a party to the Foreclosure Action, (b) potentially liquidating the Equitable Lien through the Foreclosure Action, and (c) determining the relative priority of the Equitable Lien.

D.E. 2595, *In re: Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (Bankr. S.D. Fla.).

According to the Trustee, he later discovered evidence that the Property was listed for sale at $100 million, even though at the time that the stay was lifted, VM had asserted that the Property's estimated market value was $15 million. *See id.* at D.E. 3646. The Trustee contended that the "[Bankruptcy] Court's determination in entering the Stay Relief Order, and the Trustee's agreement to support the relief set forth in the motion, were clearly based on a value that must have been wrong and evidently mistaken at the time." *Id.* at ¶ 11. Furthermore, the Trustee stated that he "had entered into a settlement agreement with the defendants in the Adversary Proceeding . . . that would resolve the Adversary Proceeding and generate $14 million of value into the Estate *if* the Property is sold for $80 million or more." *Id.* at ¶ 15. If the property were sold for less, however, the sale "would engender a comparable reduction in the amount going to the Estate." *Id.*[4] Thus, the Trustee moved for relief from the Agreed Order lifting the automatic stay.

After holding a hearing, the Honorable John K. Olson, sitting for the Honorable Raymond B. Ray, granted the Trustee's Motion and reimposed the stay. *See id.* at D.E. 3660. In doing so, Judge Olson explained that it was "not unreasonable that, at the time the Stay Relief Order was entered, the Trustee would rely on assertions by both [VM] and the United States government that

---

[4] Plaintiff argues in its Supplemental Memorandum that no such settlement has been filed with the Bankruptcy Court. *See* D.E. 163 at 4 n.2. After Plaintiff filed its Supplemental Memorandum, however, the Trustee submitted a proposed settlement agreement to the Bankruptcy Court. *See* D.E. 3847, *In re: Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR (Bankr. S.D. Fla.).

the value of the Property (as defined in the Motion) was significantly less than the asserted debt owed to VM." *Id.*

Shortly after Judge Olson reimposed the stay, the Trustee filed his Memorandum before this Court, in which he argues that the Bankruptcy Court now has jurisdiction over the Property and that the stay "bars VM from moving forward in this proceeding against the RRA Trustee or against the Property and bars this Court from taking any action that could affect the Bankruptcy Estate's interest in the Property." D.E. 156 at 5-8.[5] The Trustee asks this Court to refer the matter to the Bankruptcy Court.

VM vehemently opposes the referral of this matter to the Bankruptcy Court. It insists that bankruptcy jurisdiction does not exist with regard to any aspect of its foreclosure action and contends that "no stay [is] in effect other than, for now, with respect to Plaintiff proceeding against the Trustee." D.E. 158 at 7. VM further argues that the Trustee's equitable-lien claims — currently before the Bankruptcy Court — should be consolidated with VM's foreclosure proceedings and heard in this Court. *Id.* at 8. In addition, VM asserts that the Property is not part of the RRA bankruptcy estate because the Trustee's interest is too attenuated and "the assets of a partnership are not assets of the bankrupt partner/debtor." *Id.* at 9-10. Thus, VM asks the Court to both decline referring the foreclosure action to the Bankruptcy Court and withdraw the reference of the Trustee's equitable-lien claims to the Bankruptcy Court. *Id.* at 12.

---

[5] After considering the Memorandum, this Court referred the matter to Judge Ray; however, the Court later vacated the referral order to allow for response and reply memoranda and oral argument. *See* D.E. 157, 159.

## *II. DISCUSSION*

### A. The Jurisdiction of the Bankruptcy Court

_____Title 28, United States Code, Section 1334 provides, in relevant part,

> (a)     Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b)     Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to cases under title 11.*

(emphasis added).  Pursuant to 28 U.S.C. § 157(a), "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  In the Southern District of Florida,

> [p]ursuant to 28 U.S.C. § 157(a) and the General Order of Reference entered July 11, 1984, all cases arising under Title 11 of the United States Code, and proceedings arising in or related to cases under Title 11, United States Code, have been referred to the Bankruptcy Judges for this District and shall be commenced in the Bankruptcy Court pursuant to the Local Bankruptcy Rules.

Within the Eleventh Circuit,

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

7

*Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990)  (quoting *Pacor, Inc. v. Higgins*,

743 F.2d 984, 994 (3d Cir. 1984)).  Proceedings that are "related to" bankruptcy include "(1) causes

of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and

(2) suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 307 n.5 (1995).[6]  "Related to" jurisdiction

> is primarily intended to encompass tort, contract, and other legal
> claims by and against the debtor, claims that, were it not for
> bankruptcy, would be ordinary stand-alone lawsuits between the
> debtor and others but that section 1334(b) allows to be forced into
> Bankruptcy Court so that all claims by and against the debtor can be
> determined in the same forum.

*Matter of Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Bernal Group, Inc. v. Cox*,

23 F.3d 159, 161-62 (7th Cir. 1994)).  In contrast, where proceedings will have no effect on the

estate, the Bankruptcy Court lacks jurisdiction.  *Celotex*, 514 U.S. at 308 n.6.

At a minimum, actions involving contracts are related to bankruptcy proceedings when

resolution of the actions will impact the amount available to pay creditors in bankruptcy.  *In re*

*Matrix Imaging Servs*., 479 B.R. 182, 188 (Bankr. S.D. Ga. 2012) (citing *In re Legal Xtranet, Inc.*,

453 B.R. 699, 706 (Bankr. W.D. Tex. 2011).   Similarly, federal courts have found, in various

circumstances, that foreclosure proceedings are "related to" bankruptcy cases.  *See, e.g.*, *Matter of*

*Mem'l Estates, Inc.*, 950 F.2d 1364 (7th Cir. 1991) (finding that foreclosure of cemetery was related

to mortgagor's bankruptcy where cemetery was mortgagor company's principal asset and mortgagor

was liable to mortgagee for any deficiency after property's sale); *In re Hartley*, 16 B.R. 777 (Bankr.

---

[6] A bankruptcy estate is comprised of "all legal or equitable interests of the debtor in
property as of the commencement" of the bankruptcy case, "wherever located and by whomever
held."  11 U.S.C. §541(a).

N.D. Ohio 1982) (concluding that foreclosure proceeding was related to Chapter 7 bankruptcy case where mortgagors apparently were guarantors of obligation which was related to debtors' bankruptcy).

**1. Counts I and II**

Here, Plaintiff asserts four causes of action against Defendants: foreclosure of mortgage (Count I), foreclosure of security interests (Count II), assignment of rents (Count III), and default of a recourse liability agreement (Count IV).  The Court finds that "related to" bankruptcy jurisdiction exists with regard to Counts I, II, and III because each could conceivably have an effect on the RRA bankruptcy estate.  Indeed, VM effectively says as much in its Amended Complaint, where VM seeks to "liquidate the interest . . . , if any, of the Trustee or the Estate in the property that is the subject of this action, and determine the relative priority of the equitable lien raised by Trustee."  D.E. 48 at ¶ 5.  Similarly, in Counts I and II, VM asks the Court to declare that "all other liens [which necessarily would include any lien that the Estate might have] against the Property are inferior to that of [VM] . . . ." *Id.* at 8.  If VM succeeds in these claims, an interest of the bankruptcy estate will be lost and the amount available to pay RRA's creditors will be decreased.  Thus, the Court cannot conclude that the resolution of Counts I and II will not have an effect on the RRA bankruptcy estate.

The Eleventh Circuit considered bankruptcy jurisdiction under analogous circumstances in *In re Toledo*, 170 F.3d 1340 (11th Cir. 1999).  In that case, Orlando Toledo, a businessman who held a twenty-five-percent interest in a partnership, secretly conveyed a mortgage on partnership property to secure his personal indebtedness to a bank. *See id.* at 1342.  The bank later obtained a judgment of foreclosure on the partnership property and Toledo's residence, and Toledo and his wife, who

9

owned another twenty-five-percent interest in the partnership, filed for Chapter 11 bankruptcy. *Id.* at 1343. Toledo, his bankruptcy estate, and the bank then negotiated, and the bankruptcy court approved, a private sale of the partnership property. *Id.*

After learning of the foreclosure and sale, Carmen Sanchez, who owned a fifty-percent interest in the partnership, filed an adversary complaint in the bankruptcy court to determine her entitlement to proceeds of the sale of the partnership property and to contest the validity of the bank's lien on the property. *Id.* The bankruptcy court later issued what purported to be a final order in favor of Sanchez. *Id.* The bank then appealed, arguing that the bankruptcy court lacked subject-matter jurisdiction to adjudicate Sanchez's complaint. *Id.* at 1344.

The Eleventh Circuit concluded that the bankruptcy court had jurisdiction to entertain Sanchez's adversary proceeding because it was related to Toledo's bankruptcy under 28 U.S.C. § 1334. Sanchez, the Court observed, "was seeking a judicial determination of the extent and priority of liens and other interests in the Partnership Property so that the proceeds of the sale earlier approved by [the bankruptcy court] could be distributed appropriately." *Id.* at 1345. The Court explained that this created a nexus with the bankruptcy estate in two ways. First, if the bank's mortgage were found to be valid, its claim against the bankruptcy estate would be reduced by the amount "due and paid to the bank out of the proceeds of the sale of the Partnership Property." *Id.* Payment of that money — $200,000 — "would ultimately free up an additional $200,000 for distribution to unsecured creditors." *Id.* But if the bank's mortgage on the partnership property were held invalid, the bank would instead have to look solely to the debtor's personal residence for satisfaction of its indebtedness. *Id.* at 1346.

Second, if the mortgage were adjudged invalid, more equity in the Partnership Property

would exist, and an additional $200,000 would be available to the Partnership. *Id.* The court noted

that "[w]hatever interest the Toledos had in the Partnership at the time the petition was filed became

part of the Estate." *Id.* Thus, if the mortgage were invalid, "the Estate might have been enriched by

$100,000 (one-half of $200,000)." *Id.* This prospect "clearly" had a conceivable effect on the

Toledos' bankruptcy estate. *Id.*

Here, as in *Toledo*, adjudication of VM's foreclosure claim will affect the amount of money

in the Estate available to compensate RRA's creditors. As noted above, if VM succeeds in having

the Trustee's lien declared inferior, the amount of money available to creditors of the Estate will be

decreased. In addition, the Estate owns a 9.99% interest in Casa. Thus, if VM's mortgage is

somehow invalid, the Estate's interest in the Property will be significantly enriched and the amount

of money available to the Estate's creditors will be increased accordingly. Either prospect satisfies

the broad test of having a "conceivable effect" on the Estate. As a result, "related to" jurisdiction

exists over Counts I and II of VM's Complaint.[7]

---

[7] Plaintiff's citation to *Toledo* to suggest that the Estate's 9.99% interest in the Property is
not cognizable is misplaced. After the Eleventh Circuit had already squarely held that
bankruptcy jurisdiction over Sanchez's claim existed, it determined that Sanchez's claim seeking
a judicial determination as to the validity of the bank's mortgage did not constitute a "core"
proceeding because it was not a proceeding to determine the validity, extent, or priority of liens
on the estate's or the debtor's property, but rather, on a third party's property. 170 F.3d at 1347.
In that context, the court noted that assets owned by a partnership, such as the property on which
Toledo had obtained the mortgage, are not included in the bankruptcy estate of the individual
partner (Toledo); instead, the only partnership property before the court during an individual's
bankruptcy is the partner's personal property interest in the partnership, which consists of the
individual's interest, if any, in the partnership assets after an accounting and payment of
partnership debts out of the property belonging to the partnership. *Id.* (citation omitted).
Plaintiff apparently misconstrued this discussion to suggest that the Estate's 9.99% interest in
Luxury, and therefore, in Casa, is not a cognizable interest at all of the Estate's. This reading
conflates the jurisdictional and core-proceeding inquiries and otherwise misconstrues the
Eleventh Circuit's statements. If Plaintiff were correct in its construction of *Toledo*, the Eleventh
Circuit could not have found "related to" jurisdiction in the first place.

## 2. Count III

In Count III, Plaintiff seeks assignment of the Property's rents and "requests that the Court order that all revenues from the Property be deposited in the registry of the Court . . . ." D.E. 48 at 10. In this regard, Plaintiff has filed a Renewed Amended Motion for Assignment of Rents [D.E. 120], which the Trustee opposes. The Trustee argues that VM took assignment of the Property's loan documents well after Scott Rothstein invested in Luxury and pled guilty to conducting a Ponzi scheme. *See* D.E. 148 at 1-2. "Before receiving the assignment of the Loan Documents," the Trustee contends, "VM South Beach had access to information showing that RRA monies were transferred to Casa and used by it to make mortgage payments, maintain or enhance the value of the Property, pay Casa's vendors, or cover Casa's operating deficits." *Id.* at 2. Thus, the Trustee asserts that VM "did not receive the assignment of the Note or the Mortgage for value or in good faith, and is not a holder in due course." *Id.* The Trustee avers that its alleged equitable lien is "superior in right, title, and interest to any lien asserted by VM South Beach" and that VM "is not entitled to any rents, profits, proceeds or other revenue from the Property to the detriment of RRA's creditors, whose interests the Trustee seeks to protect through preservation of his equitable lien upon the Property." *Id.* at 3. Based on these arguments, it appears that the resolution of Count III could conceivably have an effect on the bankruptcy estate and the amount available to RRA's creditors. To the extent that the Estate — as opposed to VM — is entitled to at least a portion of rents, profits, proceeds, or other revenues collected from the Property, resolution of this claim could "conceivably" affect the Estate. Accordingly, "related to" bankruptcy jurisdiction exists over Count III.

## 3. Count IV

In Count IV, Plaintiff contends that Defendant Peter Loftin has defaulted on a recourse

liability agreement "in which he guaranteed to Lender payment of all sums due pursuant to the Recourse Liability Events as defined in Section 1 of the Recourse Agreement."  D.E. 48 at ¶ 38. Plaintiff seeks damages from Loftin as a result of the alleged defaults. *See id.* at 11.  Because Count IV appears to arise out of an agreement between Plaintiff and Defendant Loftin only and seeks damages solely against Loftin, the Court cannot identify a conceivable effect that resolution of this claim might have on the Estate.  Accordingly, it does not appear that bankruptcy jurisdiction exists over Count IV.

**B.  Referral to the Bankruptcy Court**

Plaintiff argues that the Trustee's equitable-lien claim should be tried in one proceeding with Plaintiff's foreclosure action and asks the Court to withdraw the reference to the Bankruptcy Court of the Trustee's equitable-lien claims.  Although the Court agrees that the interests of judicial economy favor one proceeding, it concludes that the Bankruptcy Court is the more appropriate forum to consider both Counts I through III of VM's foreclosure Complaint and the Trustee's equitable-lien claims.  A Bankruptcy Court's "related to" jurisdiction "allows all claims by and against the debtor to be heard in the same forum."  *In re Matrix Imaging Servs*., 479 B.R. 182, 188 (Bankr. S.D. Ga. 2012).  Were this Court to consider both the Trustee's equitable-lien claim and Plaintiff's foreclosure claim, as VM suggests, two different courts would be determining the existence and extent of the RRA Estate's various interests.  This circumstance would increase confusion and waste judicial resources.  Thus, the Court declines to withdraw the reference to the Bankruptcy Court with respect to the Trustee's equitable-lien claims.  The Court, however, will maintain Count IV of VM's

Complaint, as bankruptcy jurisdiction over that claim appears to be lacking.[8]

## C. The Effect of the Automatic Stay on this Proceeding

Because the Court refers Counts I through III of Plaintiff's Amended Complaint to the Bankruptcy Court, it need not discuss or determine the effect of the reimposed automatic stay on those claims, as those claims are now before the Court that imposed the automatic stay.  Nor has the Trustee suggested that the stay somehow bars VM from proceeding against Loftin in Count IV before this Court.  Accordingly, VM may move forward with its claim for Loftin's alleged breach of a recourse liability agreement.

## *III. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** as follows:

1. Pursuant to 28 U.S.C. § 157(a) and Local Rule 87.2 (S.D. Fla.), all pretrial matters, including those pending, relating solely to Counts I through III of Plaintiff's Amended Complaint [D.E. 48] are hereby **REFERRED** to the Honorable Raymond B. Ray for final disposition or proposed findings of fact and conclusions of law, as appropriate.

2.  If and when this case becomes ready for trial, the Court shall set it for a jury trial promptly upon receipt of such notification from the Bankruptcy Court.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 19th day of March 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

---

[8] Nor does the Court refer to the Bankruptcy Court any of the multiple counts of the Complaint in *Casa Casuarina, LLC v. WestLB, AG*, Case No. 1:12-cv-20843-KMM (S.D. Fla.), a related case that has been consolidated with the instant case.  To date, none of the parties have addressed whether any of those counts may be related to the RRA bankruptcy proceeding.

Copies:

Counsel of record

The Honorable Lurana S. Snow

The Honorable Raymond B. Ray